**BRODSKY & SMITH, LLC**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL ESTES, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FITBIT, INC., JAMES PARK, ERIC N. FRIEDMAN, LAURA ALBER, MATTHEW BROMBER, GLENDA FLANAGAN, BRADLEY M. FLUEGEL, STEVEN MURRAY and CHRISTOPHER PAISLEY,<br><br>Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Daniel Estes ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Fitbit, Inc. ("Fitbit" or the "Company"), against Fitbit and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act

of 1934 (the "Exchange Act") and breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to Google, LLC ("Parent"), and Magnoliophyta, Inc. ("Merger Sub," collectively with Parent, "Google") as a result of an unfair process for an unfair price, and to enjoin an upcoming stockholder vote on a proposed all cash transaction valued at approximately $2.1 billion (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a November 1, 2019, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, Fitbit will become an indirect wholly-owned subsidiary of Google, and Fitbit stockholders will receive only $7.35 in cash for each share of Fitbit common stock they own.  As a result of the Proposed Transaction, Plaintiff and other Fitbit stockholders will be frozen out of any future ownership interest in the Company.

3.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Fitbit without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Google without regard for Fitbit public stockholders.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Fitbit stockholders.

4.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.     On November 25, 2019, Fitbit filed a Preliminary Proxy Statement on Schedule 14A (the "Preliminary Proxy") with the United States Securities and Exchange Commission ("SEC") in support of the Proposed Transaction.

6.     Defendants breached their fiduciary duties to the Company's shareholders by agreeing to the Proposed Transaction which undervalues Fitbit and is the result of a flawed sales process.   Post-closure, Fitbit shareholders will be frozen out of seeing the return on their investment of any and all future profitability of Fitbit.

7.     Finally, in violation of sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy on November 26, 2019 with the SEC in an effort to solicit stockholders to vote their Fitbit shares in favor of the Proposed Transaction.   The Preliminary Proxy is materially deficient and deprives Fitibit stockholders of the information they need to make an intelligent, informed and rational decision of whether to tender their shares in favor of the Proposed Transaction.   As detailed below, the Preliminary Proxy omits and/or misrepresents material information concerning, among other things: (a) the Company's financial projections; (b) the sales process of the Company; and (b) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisor, Qatalyst Partners LLP ("Qatalyst").

8.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.   This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## PARTIES

9.     Plaintiff is a citizen of New Hampshire and, at all times relevant hereto, has been a Fitbit stockholder.

10.     Defendant Fitbit provides health solutions in the United States and internationally. The company offers a line of devices, including Fitbit Charge 3, Fitbit Surge, Fitbit Blaze, Fitbit

Charge 2, Alta HR, Alta, Fitbit Ace, Fitbit Flex 2, Fitbit One, and Fitbit Zip activity trackers; Fitbit Ionic and Fitbit Versa smartwatches; Fitbit Aria 2 Wi-Fi smart scales; and a range of accessories, such as bands and frames for its devices, as well as Fitbit Flyer, a wireless headphone designed for fitness.  Fitbit is incorporated under the laws of the State of Delaware and has its principal place of business at 405. Howard Street, San Francisco, CA 94015.  Shares of Fitbit common stock are traded on the NasdaqGS under the symbol "FIT."

11.     Defendant James Park ("Park") has been a Director of the Company at all relevant times.  In addition, Park serves as the President, Chairman of the Company Board, and the Company's Chief Executive Officer ("CEO").

12.     Defendant Eric N. Friedman ("Friedman") has been a director of the Company at all relevant times.  In addition, Friedman serves as the Company's Chief Technology Officer ("CTO").

13.     Defendant Glenda Flanagan ("Flanagan") has been a director of the Company since 2016.

14.     Defendant Matthew Bromberg ("Bromberg") has been a director of the Company since 2018.

15.     Defendant Laura Alber ("Alber") has been a director of the Company at all relevant times.

16.     Defendant Bradley M. Fluegel ("Fluegel") has been a director of the Company since 2018.

17.     Defendant Steven Murray ("Murray") has been a director of the Company at all relevant times.

18.     Defendant Christopher Paisley ("Paisley") has been a director of the Company at all relevant times.

19.     Defendants identified in ¶¶ 11 - 18 are collectively referred to as the "Individual Defendants."

20.     Non-Defendant Google, a subsidiary of Alphabet, Inc., primarily provides online advertising services internationally. Google includes principal Internet products, such as Ads, Android, Chrome, Commerce, Google Cloud, Google Maps, Google Play, Hardware, Search, and YouTube, as well as technical infrastructure and newer efforts, including Virtual Reality. This segment also offers digital content, enterprise cloud services, and hardware products, as well as other miscellaneous products and services.  Parent is a corporation organized under the laws of the State of Delaware and has its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.  Parent common stock is traded on the NasdaqGS under the ticker symbol "GOOGL".

21.     Non-Defendant Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Fitbit has its principal place of business is located in this District, and each of the Individual Defendants, as

Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Fitbit common stock who are being and will be harmed by Defendants' actions described herein (the "Class"). The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

26.     This action is properly maintainable as a class action because:

   a.  The Class is so numerous that joinder of all members is impracticable. According to the Preliminary Proxy, as of November 15, 2018, there were over 260 million shares of Fitbit common stock outstanding. The actual number of public stockholders of Fitbit will be ascertained through discovery;

   b.  There are questions of law and fact which are common to the Class, including *inter alia*, the following:

      i.   Whether Defendants have violated the federal securities laws;

      ii.  Whether Defendants made material misrepresentations and/or omitted material facts in the Preliminary Proxy; and

      iii. Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

   c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

   d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.  Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES**

27.    By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Fitbit and owe the Company the duties of due care, loyalty, and good faith.

28.    By virtue of their positions as directors and/or officers of Fitbit, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Fitbit to engage in the practices complained of herein.

29.    Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.  act with the requisite diligence and due care that is reasonable under the circumstances;

b.  act in the best interest of the company;

c.  use reasonable means to obtain material information relating to a given action or decision;

d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e.  avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.  disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

30.   In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Fitbit, are obligated to refrain from:

a.   participating in any transaction where the directors' or officers' loyalties are divided;

b.   participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c.   unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

31.   Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Fitbit, Plaintiff and the other public stockholders of Fitbit, including their duties of loyalty, good faith, and due care.

32.   As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Fitbit common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

CLASS ACTION COMPLAINT

33.     Fitbit provides health solutions and wearable fitness and health tracking technology in the United States and internationally.

34.     The Company's portfolio comprises of a line of devices, including Fitbit Charge 3, Fitbit Surge, Fitbit Blaze, Fitbit Charge 2, Alta HR, Alta, Fitbit Ace, Fitbit Flex 2, Fitbit One, and Fitbit Zip activity trackers; Fitbit Ionic and Fitbit Versa smartwatches; Fitbit Aria 2 Wi-Fi smart scales; and a range of accessories, such as bands and frames for its devices, as well as Fitbit Flyer, a wireless headphone designed for fitness.

35.     Fitbit offers online dashboard and mobile apps that sync automatically with and display real-time data from its wearable devices; Fitbit Coach that offers exercise programs through personal trainer and yoga apps; and Fitbit Care, a connected health platform for health plans, employers, and health systems.

36.     The Company sells its products through consumer electronics and specialty, e-commerce, mass merchant, department store, club, and sporting goods and outdoors retailers; wireless carriers; distributor; and Fitbit.com, an online store, as well as directly to consumers.

37.     The Company's recent financial performance indicated new memberships and a shift in direction. For example, in a May 1, 2019 press release announcing its Q1 financial results, the Company highlighted revenue up 10% and devices sold over 36% year-over-year. Smartwatch sales increased 117%. Introduction of new trackers helped spark the first quarter of year-over-year growth in tracker device sales in three years. This preceded the Q2 reported revenue increase of 5% year-over-year driven by 31% growth in devices sold in the quarter before. Fitbit also launched Fitbit Premium, a paid membership in the Fitbit app that uses consumer's unique data to deliver personalized, actionable guidance which expects to generate more growth.

38.     In addition, Fitbit announced two major disease detection partnerships, Fibricheck and Bristol-Meyers Squibb Pfizer Alliance, to target chronic condition areas and raise awareness and support from screening to diagnosis for heart rhythm irregularities and atrial fibrillation. They will be expanding to 59 Medicare Advantage plans in 2020 as a fully covered benefit from 42 plans.

39.     Speaking on these positive results, CEO Defendant Park stated, "In Q3 we continued to make good progress shifting our business towards the faster growing smartwatch category with the introduction of Versa 2, expanding Fitbit Health Solutions, and deepening our relationship with consumers with the launch of Premium. The continued success of the Fitbit brand is built on the trust of our users, and our commitment to strong user privacy and security will not change."

40.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial progression by Fitbit.  Clearly, based upon the positive outlook and increases in revenue, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

41.     Despite this upward trajectory and increasing financial results, the Individual Defendants have caused Fitbit to enter into the Proposed Transaction for insufficient consideration.

***The Proposed Transaction***

42.     On November 1, 2019, Google and Fitbit issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **SAN FRANCISCO--(BUSINESS WIRE) -- Fitbit, Inc. (NYSE: FIT)** today announced that it has entered into a definitive agreement to be acquired by Google LLC for $7.35 per share in cash, valuing the company at a fully diluted equity value of approximately $2.1 billion.
>
> "More than 12 years ago, we set an audacious company vision – to make everyone in the world healthier. Today, I'm incredibly proud of what we've achieved towards reaching that goal. We have built a trusted brand that supports more than 28 million active users around the globe who rely on our products to live a healthier, more active life," said James Park, co-founder and CEO of Fitbit. "Google is an ideal partner to advance our mission. With Google's resources and global platform, Fitbit will be able

to accelerate innovation in the wearables category, scale faster, and make health even more accessible to everyone. I could not be more excited for what lies ahead."

"Fitbit has been a true pioneer in the industry and has created terrific products, experiences and a vibrant community of users," said Rick Osterloh, Senior Vice President, Devices & Services at Google. "We're looking forward to working with the incredible talent at Fitbit, and bringing together the best hardware, software and AI, to build wearables to help even more people around the world."

Fitbit pioneered the wearables category by delivering innovative, affordable and engaging devices and services. Being "on Fitbit" is not just about the device – it is an immersive experience from the wrist to the app, designed to help users understand and change their behavior to improve their health. Because of this unique approach, Fitbit has sold more than 100 million devices and supports an engaged global community of millions of active users, utilizing data to deliver unique personalized guidance and coaching to its users. Fitbit will continue to remain platform-agnostic across both Android and iOS.

Consumer trust is paramount to Fitbit. Strong privacy and security guidelines have been part of Fitbit's DNA since day one, and this will not change. Fitbit will continue to put users in control of their data and will remain transparent about the data it collects and why. The company never sells personal information, and Fitbit health and wellness data will not be used for Google ads.

The transaction is expected to close in 2020, subject to customary closing conditions, including approval by Fitbit's stockholders and regulatory approvals.

Qatalyst Partners LLP acted as financial advisor to Fitbit, and Fenwick & West LLP acted as legal advisor.

### *The Inadequate Merger Consideration*

43.     Significantly, the Company's financial prospects, opportunities for future growth, and synergies with Google establish the inadequacy of the merger consideration.

44.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements of the Company in recent years.

45.     The transaction may undervalue the Company and would result in a substantial loss for many Fitbit shareholders. For example, the consideration is 63 percent below the 2015 IPO

1    price of $20, well-below the all-time high near $50 per share and provides virtually no premium

2    over the share price as recently as February 2019. Since August 1 and months before the Merger

3    announcement, Fitbit stock has turned around, growing exponentially from around $3 per share to

4    its highest point since June 2018 to over $7 per share.

5         46.    Moreover, the Proposed Transaction represents a significant synergistic benefit to

6    Google, particularly in the healthcare arena. In a Forbes article discussing the synergies, the author

7    noted that Google will "use its ability to aggregate and analyze millions of points of data daily

8    from Fitbit's 28 million users" to swiftly move into the growing tech healthcare field. The article

9    further noted, that Google's 2.6 million users on its comparable product to Fitbit's offering was

10   "not enough to become a game changer in driving health recommendations and interventions…

11   which they could not get there as quickly without Fitbit." Lastly, Google's Rick Osterloh, senior

12   vice president of Devices and Services said "over the years, Google has made progress with

13   partners in this space with Wear OS and Google Fit, but we see an opportunity to invest even more

14   in Wear OS as well as introduce Made by Google wearable devices into the market."

15        47.    As a result, Google's ability to analyze data of Fitbit's active users supplying data

16   every day, in addition to Fitbit's recent investments into disease and irregularity detection as

17   mentioned above, exemplify the significant synergistic benefits to Google and further raise the

18   stakes as to why Google did not pay more for the Company.  Clearly, while the deal will be

19   beneficial to Google it comes at great expense to Plaintiff and other public stockholders of the

20   Company.

21        48.    Moreover, post-closure, Fitbit stockholders will be frozen out of any ownership

22   interest in the Company, forever foreclosing the ability to see the true return on their investments.

23        49.    It is clear from these statements and the facts set forth herein that this deal is

24   designed to maximize benefits for Google at the expense of Fitbit stockholders, which clearly

25   indicates that Fitbit stockholders were not an overriding concern in the formation of the Proposed

26   Transaction.

27

28

CLASS ACTION COMPLAINT

*Preclusive Deal Mechanisms*

50.     The Merger Agreement contains certain provisions that unduly benefit Google by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that is especially onerous and impermissible.  Notably, in the event of termination, the merger agreement requires Fitbit to pay up to $80,000,000 to Google, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Fitbit must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

51.     The Merger Agreement also contains a "No Solicitation" provision that restricts Fitbit from considering alternative acquisition proposals by, *inter alia*, constraining Fitbit's ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a *"Superior Proposal"* as defined in the Merger Agreement.

52.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide Google information in order to match any other offer, thus providing Google access to the unsolicited bidder's financial information and giving Google the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Google.

53.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and

pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

54.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

55.     The breakdown of the benefits of the deal indicate that Fitbit insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Fitbit.

56.     Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for large cash pay days upon the consummation of the Proposed Transaction.

57.     Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option or equity award, will be canceled and converted into the right to receive certain consideration according to the merger agreement.

58.     Moreover, certain employment agreements with certain Fitbit executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Fitbit's common stockholders.

59.     These payouts will be paid to Fitbit insiders, as a consequence of the Proposed Transaction's consummation, as follows:

CLASS ACTION COMPLAINT

| Named Executive Officer | Cash($)[1] | Equity Awards($)[2] | Heath Insurance Premiums($)[3] | Total($) |
|---|---|---|---|---|
| James Park[4] | 3,000,000 | 8,348,513 | 14,937 | 11,363,450 |
| Eric Friedman[4] | 796,250 | 3,875,537 | 29,430 | 4,701,217 |
| Ronald Kisling | 739,846 | 2,219,825 | 9,958 | 2,969,629 |
| Andy Missan | 780,362 | 1,567,762 | 30,016 | 2,378,140 |
| Jeff Devine | 704,615 | 1,333,724 | 29,903 | 2,068,242 |

60.     Thus, while the Proposed Transaction is not in the best interests of Fitbit stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Preliminary Proxy**

61.     On November 26, 2019, the Board and Fitbit caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy that, in violation their fiduciary duties, failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

_Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction_

62.     Specifically, the Preliminary Proxy fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy fails to disclose:

a.   Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides

illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

_Omissions and/or Material Misrepresentations Concerning Fitbit's Financial Projections_

63.     The Preliminary Proxy fails to provide material information concerning financial projections provided by Fitbit's management and relied upon by Qatalyst in its analyses.   The Preliminary Proxy fails to disclose and/or discloses management-prepared financial projections for the Company which are materially misleading.   The Preliminary Proxy indicates that in connection with the rendering of Qatalyst's fairness opinion, Qatalyst reviewed "Other internal documents relating to the history, current operations, and probable future outlook of the Company, including financial projections for the Company, provided to Qatalyst by the Company's management (the "Management Projections")"

64.     Accordingly, the Preliminary Proxy should have, but fails to provide, certain information related to the Management Projections provided by Fitbit management to the Board and Qatalyst.   Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." _In re Netsmart Techs., Inc. S'holders Litig_., 924 A.2d 171, 201-203 (Del. Ch. 2007).

65.     Specifically, the Preliminary Proxy indicates that Qatalyst "also reviewed certain forward-looking information relating to Fitbit, including certain non-public unaudited financial forecasts for Fitbit as a standalone company, prepared by our management (the "Projections")."

66.     The Preliminary Proxy provides non-GAAP financial metrics, including (i) Adjusted EBITDA. (ii) Cost of Revenue, (iii) Gross Profit, (iv) Operating Expense, (v) NOPAT, (vi)Net Income (Loss) and (vii) Earnings Per Share, but fails to disclose a reconciliation of all non-

GAAP to GAAP metrics. Also, the Preliminary Proxy fails to disclose the line items utilized to calculate the above-referenced non-GAAP metrics.

67.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

68.     Without accurate projection data presented in the Preliminary Proxy, Plaintiff and other stockholders of Fitbit are unable to properly evaluate the Company's true worth, the accuracy of Qatalyst' financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Qatalyst*

69.     In the Preliminary Proxy, Qatalyst describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

70.     With respect to the *Illustrative Discounted Cash Flow Analysis*, the Preliminary Proxy fails to disclose the following:

a.     The number of fully-diluted shares of Fitbit;

b.     The specific inputs and assumptions used to calculate the discount rate range of 12.5%-16.5%;

c.     The terminal value and Cash on hand of the Company; and

   d.   The basis for applying a range of multiples of enterprise value to next-twelve-months estimated revenue of 0.3x to 0.8x.

71.     These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

72.     Without the omitted information identified above, Fitbit's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.   Moreover, without the key financial information and related disclosures, Fitbit's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.   As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy.

### FIRST COUNT

### Claim for Breach of Fiduciary Duties

### (Against the Individual Defendants)

73.     Plaintiff repeats all previous allegations as if set forth in full herein.

74.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

75.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Fitbit.

76.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Fitbit by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Fitbit to its public stockholders.

77.     Indeed, Defendants have accepted an offer to sell Fitbit at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

78.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

79.     The Individual Defendants dominate and control the business and corporate affairs of Fitbit, and are in possession of private corporate information concerning Fitbit's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Fitbit which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

80.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

81.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Fitbit's assets and have been and will be prevented from obtaining a fair price for their common stock.

82.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

83.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

**SECOND COUNT**

**Aiding and Abetting the Board's Breaches of Fiduciary Duty**

**Against Defendant Fitbit**

84.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

85.     Defendant Fitbit, knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Acquisition, which, without such aid, would not have occurred.

86.     As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

87.     Plaintiff and the members of the Class have no adequate remedy at law.

**THIRD COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

88.     Plaintiff repeats all previous allegations as if set forth in full herein.

89.     Defendants have disseminated the Preliminary Proxy with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

90.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect

CLASS ACTION COMPLAINT

of any security (other than an exempted security) registered pursuant to section 78l of this title.

91.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following: No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

92.    The Preliminary Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

93.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

94.    The Individual Defendants were at least negligent in filing an Preliminary Proxy that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy not misleading.

95.    The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote its shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**FOURTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against All Individual Defendants)**

96.     Plaintiff repeats all previous allegations as if set forth in full herein.

97.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy was materially misleading to Company stockholders.

98.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

99.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Fitbit's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the

misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Preliminary Proxy was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy and are therefore responsible and liable for the misrepresentations contained herein.

100.    The Individual Defendants acted as controlling persons of Fitbit within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Fitbit to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Fitbit and all of its employees.  As alleged above, Fitbit is a primary violator of Section 14 of the Exchange Act and SEC Rule Preliminary Proxy.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining the Proposed Transaction;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.    Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Fitbit and obtain a transaction which is in the best interests of Fitbit and its stockholders;

F.    Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

CLASS ACTION COMPLAINT

G.      Awarding Plaintiff, the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: December 10, 2019                    **BRODSKY & SMITH, LLC**

By: _____
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*